The Kroger Co., Appellant, *v.* Cook, Dir., Dept. of
Liquor Control, Appellee.

(No. 9146—Decided December 19, 1968.)

*Messrs. Porter, Stanley, Treffinger & Platt* and *Mr.
James J. Hughes, Jr.,* for appellant.

*Mr. William B. Saxbe,* attorney general, *Mr. Charles
S. Lopeman* and *Mr. James E. Rattan,* for appellee.

DUFFEY, P. J. This is an appeal on questions of law from a judgment of the Common Pleas Court of Franklin County declaring that certain promotional programs of appellant, The Kroger Co., are in violation of Regulation 53 of the Liquor Control Commission, and of Section 6, Article XV, Constitution of Ohio, and of Section 2915.01 *et seq.*, Revised Code.

Appellant, The Kroger Co., has engaged in a business promotion called "Race to Riches." In essence, appellant distributes cards bearing numbers which correspond to the numbers upon various automobile racing cars. Each week a film is televised showing the cars engaging in a race. If the card contains the number of the winning car or sequence of such numbers, a prize is awarded to the card-holder. Only a few of the numbers on the cards are winning numbers and these are distributed randomly. The opportunity to obtain a card containing a winning number is therefore a matter of chance.

A card may be obtained as follows:

1. Any person passing through a "check-out" line at one of appellant's stores is offered one regardless of whether the person has or is purchasing any merchandise. Some nonpurchasers do pass through the check-out lines.

2. Any person who enters the store and requests a card is furnished one without regard to a purchase and although remaining in the vestibule without entering the merchandise display area.

3. Any person who requests a card at the store manager's office.

4. Any person who requests by mail or telephone.

The Attorney General contends, and the Common Pleas Court agreed, that the promotion constituted a lottery under Section 6, Article XV, Constitution of Ohio, that it was gambling within the provisions of Ohio gambling statutes (Section 2915.01 *et seq.*, Revised Code), and that it was a violation of Regulation 53 of the Liquor Control Commission.

Section 6, Article XV, Constitution of Ohio, provides:

"Lotteries, and the sale of lottery tickets for any purpose whatever, shall forever be prohibited in this state."

In my opinion, the promotional program here is not a lottery within the meaning of that constitutional provision. While there may be a chance, and a prize, there is no "price" charged. The promotion does involve costs to the promoter, but the cost of this or any other advertising promotion cannot be transformed into a *quid pro quo*. Cost does not create a sale transaction nor constitute a bargain for consideration. Customers may be intrigued by the opportunity for a prize and either patronize appellant's stores or purchase more items or otherwise respond to the lure of the promotion. However, the fact that certain consumer behavior patterns are anticipated as a matter of predictable response to a set of circumstances and that the anticipated responses occur does not establish that the behavior of any individual was bargained for by the promoter.

The promotion here is, from a legal viewpoint, simply the gift of a chance for a prize. It is legally identical in its essentials to the "sweepstake" promotion so widely engaged in by major newspapers, consumer goods manufacturers and merchandising enterprises. It is also legally identical to the drawings for door prizes which frequently are held at meetings ranging from the Ladies Aid Society to the Republican War Veterans Picnic.

In holding that the promotion here is not a lottery, it should be firmly understood that I am not expressing any view on the desirability of such methods of advertising and promoting. Neither am I expressing any opinion on the constitutional, statutory or regulatory power to control or prohibit such schemes.

For the reasons stated, I believe that the promotion here is not in violation of the gambling laws in Section 2915.01 *et seq.*, Revised Code.

I cannot agree with the concurring opinion's suggestion that the phrase "scheme of chance" as used in Section 2915.12, Revised Code, and other sections in that chapter, is different and broader than lottery or gambling. The phrase is used repeatedly throughout Chapter 2915, Revised Code. In my opinion, the phrase is used, together with several others; in an attempt to describe comprehensively any kind of transaction the essential elements of

which include a price, a chance and a prize. I believe it is for that reason that the General Assembly said "lottery or scheme of chance, *by whatever name known.*" (Section 2915.12, Revised Code.) (Emphasis added.)

Appellee contends that the promotion is a violation of Regulation 53 of the Liquor Control Commission. Section II of that regulation provides:

"No person authorized to sell alcoholic beverages shall have, harbor, keep, exhibit, possess or employ or allow to be kept, exhibited or used in, upon or about the premises of the permit holder any device, machine, apparatus, book, records, forms, tickets, papers or charts which may or can be used for gaming or wagering or the recording of wagers, pools or chances on the result of any contest, or allow or conduct gaming or wagering on such premises on (of) any game of skill or chance.

"Effective July 5, 1950. Incorporates former Reg. 32, effective after September 5, 1935, and amends the same."

Broken down into its components, the regulation:

(1) Prohibits a permit holder having anything which can be used for

(a) gaming,

(b) wagering,

(c) the recording of wagers,

(d) the recording of pools,

(e) the recording of chances on the result of any contest.

(2) Prohibits a permit holder from allowing or conducting

(a) gaming or wagering on a game of skill,

(b) gaming or wagering on a game of chance.

For the reasons expressed, the promotion here cannot be classified as wagering, wagers or pools. The concurring opinion concludes that the gift of a chance to win a prize constitutes "gaming" and a "game of chance." I cannot agree. The context of the regulation shows otherwise. I also point out that the last clause of the regulation does *not* prohibit allowing or conducting a game of chance. It prohibits allowing "*gaming or wagering * * * on* any game of skill or chance." (Emphasis added.) Clearly, the regulation was not intended to prohibit the sale of beer on

premises used for games of skill such as professional football and baseball in Cleveland, Cincinnati and other cities, or at professional basketball events. It is equally clear, therefore, that the same clause does not prohibit conducting games of chance, unless there is wagering or gaming on that game.

The Attorney General argues that the regulation covers the gift of chances to win a prize by the phrase "chances on the result of any contest." However, careful reading of the regulation in its complete context shows that phrase does not broaden the regulation. It prohibits having anything *"which can be used for gaming* or wagering or *the recording of wagers, pools or chances on the result of any contest."*

To prohibit the gift of a chance involves practices commonly carried on under almost infinite circumstances, many of which are quite innocuous, although some are quite undesirable. It should be noted that in any grocery store there are dozens of products on which the manufacturer offers a chance for a prize. The device is also commonly used by major newspapers to promote circulation, automobile manufacturers, and, as previously noted, groups ranging from the local church sodality to political meetings. "Permit premises" range from private parks used for picnics by groups with 24-hour special event permits to arenas such as the Cleveland Municipal Stadium.

It is important in our American system that courts not, under the guise of judicial interpretation, establish policy that can and should be covered by statutory provisions or the adoption of a regulation.

The plain fact is that a promotion such as "Race to Riches" is premium or gift merchandising, and not gambling or a lottery or the recording of chances on the result of a contest. Gift merchandising is covered by another regulation.

Regulation 45 of the Liquor Control Commission provides:

"Premium or gift merchandising in connection with the solicitation, advertising or sale of alcoholic beverages is prohibited.

"Effective July 5, 1950."

While counsel for the department did not brief or argue the application of this regulation, I think it clearly applies to appellant's promotion on the facts of record in this case. The promotion here is not limited to the sale of food products such as the "sweepstakes" being conducted by manufacturers of products sold in Kroger stores. It is conducted by Kroger itself to increase the sale of all products in the stores. Kroger's products offered for sale include (in these stores) alcoholic beverages. Therefore, the promotion involves the gift of something of value (a chance to win a prize) in connection with the advertising and sale of alcoholic beverages.

On the basis of Regulation 45, and solely on that ground, I would affirm the judgment of the Common Pleas Court.

The judgment of the Common Pleas Court will be affirmed.

*Judgment affirmed.*

Troop, J., concurs separately, but not in paragraph one of the syllabus.

Herbert, J., concurs separately.

Troop, J., concurring. Reference is to the decision of Duffey, P. J., for the basic facts necessary to this decision.

Counsel for the appellant suggest that the outcome of this case will encompass a broad sweep and "will determine the legality or illegality of all promotional give-away games in the state of Ohio." However enticing such a suggestion might be, counsel must be reminded that the case on for review by this court involves a clearly-defined and limited question concerning the "promotional" games "Race to Riches" and "Pepsi-Cola Bottle Cap Promotion," as found upon the premises and operated through the sales channels of a permit holder, The Kroger Co. From the modest game of "Cash-in-a-Flash," wherein a customer of an oil company can win up to $3,000, through the gamut of thousands of prize-winning devices, or "giveaways," including a cut of the $299,000 available from the Reader's Digest Holiday Sweepstakes to the luxury game

"Win a Clean Sweep," in which Lysol Toilet Bowl Cleaner provides a chance to win free food, free drugs, a bank account and a new house—all would enjoy a finding that they were not "lotteries" or not "gambling," but they are not litigants in the instant case which concerns the operation on permit premises of the "promotional" games named in this case.

The allegations in plaintiff's petition indicate that the action filed in Common Pleas Court was prompted by action taken by the Director of Liquor Control before the Liquor Control Commission to secure revocation of the permit held for its supermarket at 675 Harrisburg Pike in the city of Columbus. The basis for the revocation sought was claimed violations of Regulation LCc-1-53 (II) of the Liquor Control Commission. Plaintiff quotes from the charges made by the director as shown in the issued "Notice of Hearing." The charges say that agents of the permit holder:

"* * *did have, keep, and/or possess in and upon or about the permit premises, a paper, to wit, a race card, which may or can be used for a chance on the result of a contest * * *."

The language used in the second violation charged is somewhat different:

"* * * did allow to be kept or exhibited in and upon or about the permit premises, devices, to wit, Pepsi Cola 'joker' bottle caps, which may or can be used for gaming or chances on a contest * * *."

Both charges indicate violation of Regulation 53.

The proceeding started by the director is still pending. Plaintiff elected, during the pendency and before a hearing, to begin a proceeding in the Common Pleas Court to secure an injunction against the director to prevent disposition of permit requests, filed and to be filed, and also for a declaratory judgment finding "that the promotional activities" of the plaintiff are not in violation of Regulation 53 and to issue an order restraining the director from applying the Regulation 53 to the "promotional activities" of the plaintiff. The decision of this court in *International Breweries, Inc.*, v. *Crouch, Dir.* (1963), 118 Ohio App. 202, approves the use of declaratory judgment

48

procedures when the interpretation of a regulation is the issue.

Consideration is directed to Regulation 53, Section II, as the focal point in this review. It reads as follows: "No person authorized to sell alcoholic beverages shall have, harbor, keep, exhibit, possess or employ or allow to be kept, exhibited or used in, upon or about the premises of the permit holder of any device, machine, apparatus, book, record, forms, tickets, papers or charts which may or can be used for gaming or wagering or the recording of wagers, pools or chances on the result of any contest, or allow or conduct gaming or wagering on such premises on any game of skill or chance. * * *"

It is well to note that the regulation does not use the term "lottery."

Reduced to terms applicable to the charges lodged against the agents of Kroger in the instant case, the regulation reads:

"No person authorized to sell alcoholic beverages shall have, * * *, upon or about the premises of the permit holder any device, * * * tickets, papers or charts which may or can be used for gaming * * * or the recording of * * * chances on the result of any contest, or allow or conduct gaming * * * on such premises on any game of * * * chance. * * *"

The trial court and counsel, in briefs and argument, devote much time and space to analysis of lotteries and gambling. In simple terms, the regulation provides that a permit holder may not have on permit premises materials or devices which may or can be used for gaming or for the recording of chances on the result of a contest. Neither may a permit holder allow or conduct any game of chance or skill on the premises. "Race to Riches" and "Pepsi-Cola Bottle Cap Promotion" unquestionably involve the element of chance. The former involves chance on the result of a contest, and the latter is "gaming"—to participate in a game of chance for a prize. In counsels' discussion of the necessary element to support a charge of gambling, or a lottery, i. e., prize, chance, and consideration, it is essentially conceded that prize and chance are present in all so-called "giveaway" games. Debate cen-

ters on the element of consideration. If the invitation, issued by counsel for the appellant, to pass upon the character of all the "giveaway" games contained in the "Appendix to Brief of Amicus Curiae," and to determine if they constitute gambling or a lottery, were accepted, the presence or absence of "consideration" might become highly involved as well as important. The problem is simpler in the instant case. It involves the question of the power of the liquor department and commission to regulate, and specifically the question of the regulation of permit premises, to the extent of forbidding a game of chance, or the contrivance to operate it, on such premises.

Statutory authority for the making of rules and regulations by the commission is supplied by Section 4301.03, Revised Code. Subsection (B) authorizes regulations "in detail" for the conduct of any business authorized under permits issued with a view to insuring compliance with applicable statutes "and the maintenance of public decency, sobriety, and good order in any place licensed under such permits."

Perhaps the Legislature must speak as to the concept of "public decency, sobriety, and good order." It has done so in Chapter 2915, Revised Code, a criminal statute and, therefore, not involved here, directed to "Gambling." Section 2915.12, Revised Code, needs special attention in the instant case. It prohibits within the state the establishment, etc., in detail, of a lottery "or a scheme of chance, by whatever name known." The "scheme of chance" is clearly distinguished from "a lottery," for whatever purpose the Legislature may have had in mind. Also included in the prohibitions in the section is the requirement that any individual may not "by any of such means, sell or expose for sale anything of value."

There are frequent references in the statutes to a lottery "or scheme of chance."

Section 2915.10, Revised Code, says that a person may not "dispose of a ticket, * * * or device for or representing * * * an interest in a lottery *or scheme of chance.*" (Emphasis added.) Advertising of a lottery "or scheme of chance" subjects an offender to possible fine and imprisonment under Section 2915.19, Revised Code.

It would appear that the Legislature has spoken with sufficient clarity to indicate that gambling, which includes a scheme of chance, is opposed to public decency and good order.

Basic authority for the regulation of the conduct of permit business "in detail" stems from Section 4301.03, Revised Code. Other statutes specifically regulate some phase of the business, or authorize such regulation, typical of which is Section 4301.211, Revised Code. The courts have spoken in general and specific terms also.

An early case, *State, ex rel. Zugravu*, v. *O'Brien* (1935), 130 Ohio St. 23, held in paragraph one of the syllabus:

"Within constitutional limitations, the General Assembly may, in the exercise of the police power, limit or restrict, by regulatory measures, the traffic in intoxicating liquors."

The court also said that permits are revocable and create no contract or property rights. In *Neil House Hotel Co.* v. *Columbus* (1944), 144 Ohio St. 248, the court made a similar statement as to police power in a case in which a regulation (No. 30) of the board conflicted with a city ordinance. The regulation was held to be proper and controlling.

Emphasizing the personal character of a permit, the Supreme Court in *Abraham* v. *Fioramonte* (1952), 158 Ohio St. 213, at page 226, makes an extremely broad generalization as to control of permit business, as follows:

"* * * It is uncontrovertable that the sale of intoxicating liquors is a business completely controlled in Ohio by legislation. It is not an ordinary business in which individuals may freely engage."

In a more recent case, *Solomon* v. *Liquor Control Comm.* (1965), 4 Ohio St. 2d 31, concerned with specific statutory rules or commission regulations, generalizes concerning the nature of the liquor business, as follows:

"* * * Because of the harmful potentialities incident to the conduct of such business, those engaging therein must obtain a permit from the state and by rules and regulations adopted and promulgated pursuant to statutory

authority by the Department of Liquor Control, the regulating and supervising agency created by the state to oversee and police, as it were, the liquor business.* * *"

Courts have also spoken concerning specific regulation of phases of the liquor business. The question of delegation of the power to make regulations conferred by Section 6064-3, General Code (forerunner of Section 4301.03, Revised Code), was considered by the court in *Coady* v. *Leonard* (1937), 132 Ohio St. 329. A board regulation (No. 43) controlled advertising of beer and intoxicating liquors. The court held, in paragraph one of the syllabus, that the authorizing statute:

"* * * confers only administrative power on the Board of Liquor Control and is not violative of Section 1 of Article II of the Constitution of the state of Ohio, as a delegation of legislative power."

It further held, in paragraph two of the syllabus, that the regulation forbidding the use of a brand name in advertising:

"* * * is a valid and reasonable regulation, is not discriminatory, and is within the power to make subordinate rules and regulations as to advertising, conferred by paragraph '(f)' of Section 6064-3, General Code."

The case of *Pompei Winery, Inc.*, v. *Board of Liquor Control* (1957), 167 Ohio St. 61, concerns statutory control of the liquor business and delegation of power to make regulations thereunder. Several pronouncements in the *per curiam* opinion deserve attention. First, the generalization at page 66, as follows:

"The court notes, however, that the fundamental purpose of the Liquor Control Act in the first instance is to absolutely control the liquor industry in the state of Ohio *as a matter of social and public policy,* * * *." (Italics in the text.)

At page 67, the court comments on changing social and economic factors as precluding the fixing of rigid minimum prices by the General Assembly. The assembly delegated the price-fixing power, and the court says:

"It is, then, neither surprising nor unlawful that the General Assembly vested the Board of Liquor Control,

which is in constant touch with the situation in Ohio, with discretion regarding this particular piece of legislation.''

This court passed upon the validity of Liquor Board Regulation 45 in *International Breweries, Inc.,* v. *Crouch, Dir.* (1963), 118 Ohio App. 202. The pronouncement of the court is as follows:

''2. A regulation of the Board of Liquor Control which prohibits 'premium or gift merchandising in connection with the solicitation, advertising or sale of alcoholic beverages' is within the powers granted to such board by Section 4301.03, Revised Code, and is a reasonable exercise thereof.''

Regulation LCc-1-53 (II), prohibiting any permit holder from having on the permit premises any device, tickets, papers or charts which may or can be used for pools or chances on the result of any contest, or allow, or conduct, on such premises ''gaming'' on any game of chance, is within the powers granted to the commission by Section 4301.03, Revised Code, and is a reasonable exercise thereof. ''Race to Riches'' provides chances on the result of a contest. ''Pepsi-Cola Bottle Caps'' is a game of chance for a prize. It resembles the game common to the political ward meeting to encourage attendance. Everyone who comes to the meeting gets a ticket. Drawings come at the end of the meeting. The prize goes to the one whose ticket is drawn from the hat. The device is a ''game of chance'' or ''gaming'' proper at the ward meeting but forbidden by regulation on the premises of a permit holder.

Prize and chance are essential to a ''game of chance.'' Much point is made by appellant concerning the matter of consideration as necessary to a gambling scheme or a lottery. That factor is not necessary to the ''game of chance.'' It is, however, necessary to make it illegal under Chapter 2915, Revised Code, but it must not be overemphasized when directing attention to the ingenious variety, the colorful flamboyance, and the multiple involvements of the law of probability displayed in the modern ''games,'' as the games are interwoven in a complex economy.

Years ago, a small confectioner in the south end of the

city of Dayton displayed on his counter a box of attractive chocolate candy. The children who patronized his store were further intrigued by the fact that you could pay your penny, receive a piece of candy, and, if the cream center were pink, you received a second piece, whereas if the center were white you got only the piece for which you paid. It provided an early introduction to the age-old, utterly fallacious notion that you could get something for nothing. The elements were prize, chance, and consideration.

However elaborate, intricate, colorful or complex the modern game, the elements are still present. The confusing element is consideration, because the modern game is a part of promotional advertising, which fact generates much debate as to who pays. One thing is conclusively sure —somebody does.

35 Ohio Jurisprudence 2d 63, Section 3, discusses lotteries and gambling. At page 64, the text writers suggest that the consideration must be derived directly or indirectly or there is no lottery. Then follows another proposition which reads:

"* * * On the other hand, the strict consideration that is required in contracts is not the kind required as an element of a lottery, and what may appear on its face to be a gratuitous distribution of property or money has frequently been declared to be merely a device to evade the law."

The text goes on to say:

"The element of advertisement and increased patronage is consideration sufficient to constitute a lottery, and where lottery tickets are given with meals, the consideration is adequate."

The classic case in Ohio is *Troy Amusement Co.* v. *Attenweiler* (1940), a Second District Court of Appeals case (64 Ohio App. 105) affirmed by the Supreme Court in 137 Ohio St. 460, and is still the law of Ohio. At page 116 (of 64 Ohio App.) the court speaks as follows:

"* * * it does not mean that pay shall be directly given for the right to compete. It is only necessary that the person entering the competition shall do something or give up

some right sufficient to comply with that requirement. Nor does the benefit to the person offering the prize need be directly dependent upon the furnishing of a consideration. Advertising and the sales resulting thereby, based upon a desire to get something for nothing, are amply sufficient as a motive. * * *''

Directly in point is the statement of the court at page 121 (of 64 Ohio App.) as follows:

''The element of advertisement and increased patronage is sufficient consideration flowing to the operator to bring the transaction within the condemnation of promoting and advertising a scheme of chance.''

The court notes particularly the argument that some participate without paying. The comment is (page 122 of 64 Ohio App.), ''This argument seems to us trivial.'' An observation follows that the argument might be a defense if one were charged with the criminal offense of gambling ''but it certainly can be no defense to one who is operating a scheme of chance.''

In the instant case we are concerned with a strictly civil matter not a criminal matter.

The far more basic element in all schemes of chance is noted by the court at page 117 (of 64 Ohio App.)— people must be made to believe that they will get something for nothing. The court says:

''* * * This is the evil in all schemes of chance, no matter under what novel or devious methods they are conducted. * * *''

''Giveaway Games,'' if in fact they are as counsel for the appellant so contend, incorporate the age-old illusion of something for nothing in the promotional advertising supporting the game and could well be a violation of Regulation 45 as well as Regulation 53. Regulation 45 reads as follows:

''Premium or gift merchandising in connection with the solicitation, advertising or sale of alcoholic beverages is prohibited.''

(See, also, Section 2915.12, Revised Code, *supra.*) Such, however, was neither charged nor argued, although I concur with Duffey, P. J., in holding that the regulation was violated.

In the instant case we deal with chances on the result of a contest and gaming, or a game of chance.

HERBERT, J., concurring. I concur in Judge Duffey's conclusion that the game, ''Race to Riches,'' is not gambling under current statutes, cases and regulations. I am also in accord with his determination that Regulation 45 prohibits the conduct here under consideration. However, it is my further opinion that these games are also proscribed by Regulation 53, which was briefed and argued by the parties. The games are clearly contests.

It may be said that all gambling involves a contest, but not all contests involve gambling. However, the regulation is designed to prohibit both activities, each of which stimulates the normal human desire to win and, by the same token, arouses equally normal human disappointment or anger at having lost. The disassociation of these emotions from the atmosphere and evironment of premises where alcoholic beverages are dispensed and consumed was likely one of the original considerations in the adoption of Regulation 53. The Liquor Department clearly felt that high emotion and alcohol are not compatible.

The question then becomes whether the language of the regulation is broad enough to reasonably apply to permit holders upon whose premises alcohol is not consumed. I believe that it is. Its first line defines its breadth and the fact that it applies to all persons ''authorized to sell alcoholic beverages.'' Nowhere does the regulation limit its application to premises where alcohol is consumed, in spite of what may have been one of the original moving factors involved in its adoption, and no permit holder could reasonably contend that he was misled in that regard.

The Department of Liquor Control simply does not want its permit holders, irrespective of the type of permit concerned, furthering or participating in contests on permit premises, and the department's authority to enforce its desire in that respect seems well established.